Jose R. **RODRIGUEZ** and Guadalupe Rosas Rodriguez, Individually and as Next Friends of Natalie Rosas Rodriguez, a minor, Petitioners,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–2631 V.

United States Court of Federal Claims.

Aug. 14, 1995.

---

Richard Gage, Cheyenne, WY, for petitioners.

Althea E. Walker, with whom were Assistant Attorney General Frank W. Hunger, Helene M. Goldberg, John Lodge Euler and Gerard W. Fischer, Washington, DC, for respondent.

## OPINION AND ORDER

TURNER, Judge.

This opinion addresses petitioners' May 25, 1995 Motion for Review of the decision of the special master, pursuant to the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), *as amended*, 42 U.S.C. §§ 300aa–10 to –34 (1988 & Supp. V 1993), dismissing the petition. Petitioners seek compensation for injuries allegedly suffered as a result of a diphtheria-pertussis-tetanus (DPT) vaccination. The matter has been fully briefed, and oral argument is deemed unnecessary. We conclude that the special master's decision was not arbitrary or otherwise unlawful and that the decision must be sustained. 42 U.S.C. § 300aa–12(e)(2).

### I

On October 1, 1990, petitioners instituted an action seeking compensation for injuries suffered by their daughter Natalie Rosas Rodriguez after receipt of a DPT vaccination. Thereafter, an issue arose as to whether petitioners had incurred unreimbursable vaccine-related expenses in excess of $1,000, a statutory prerequisite to filing a petition. 42 U.S.C. § 300aa–11(c)(1)(D)(i). Because petitioners are public assistance recipients, Medicaid has paid Natalie's medical expenses since she was vaccinated.

Petitioners conceded that they had not spent $1,000 of their own money prior to filing a petition under the program. Accordingly, the special master held: "Having failed to satisfy [section 300aa–11(c)(1) ], petitioners have also failed to present a prima facie case and the court must dismiss their petition." *Rodriguez v. Sec. of Dep't of Health & Human Servs.*, No. 90–2631V, 1995 WL 273952 (Fed.Cl.Spec.Mstr. April 25, 1995). Pursuant to RCFC Appendix J, petitioners filed a Motion for Review on May 25, 1995, alleging that the special master's decision was not in accordance with law. In support of their motion, petitioners maintain that the language of the statute is ambiguous and that the relevant legislative history suggests that vaccine recipients such as Natalie are covered by the Vaccine Act. Petitioners further assert that the statutory construction urged

by the special master violates the Equal Protection clause of the U.S. Constitution.[1]

## II

Section 300aa–11(c)(1) of title 42, U.S.C., lists the matters which a petitioner seeking compensation for a vaccine-related injury must prove. The relevant parts of that section provide:

A petition for compensation under the Program for a vaccine related injury or death shall contain—

(1) ... an affidavit, and supporting documentation, demonstrating that the person who suffered such injury or who died—

. . . .

(D)(i) suffered the residual effects or complications of such illness, disability, injury or condition for more than 6 months after the administration of the vaccine and incurred unreimbursable expenses due in whole or in part to such illness, disability, injury, or condition in an amount greater than $1,000. . . .

Petitioners must prove the occurrence of these requirements in order to establish a prima facie case.

## A

■ It is petitioners' position that they have satisfied the requirement that unreimbursable vaccine-related expenses in excess of $1,000 be expended, although all such costs were funded by Medicaid. They argue that Congress intended the inquiry to be whether $1,000 in medical expenses were incurred *at all*, rather than *who* actually paid them. They contend that the monetary threshold, like the six-month time restriction in the same provision, serves as a measure of the severity of injury, because Congress only intended to compensate injuries of a certain magnitude. In support of this position, petitioners rely upon testimony given during certain congressional hearings.

■ In questions of statutory construction, a court must first examine the language of the statute at issue. When a statute is plain and unequivocal on its face, there is no need to resort to legislative history. *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961). The assumption is that the ordinary meaning of that language accurately expresses the legislative purpose. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). Resort to extrinsic aids, including legislative history, only occurs where a statute is ambiguous. *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1559 (Fed.Cir.1988). Thus, petitioners' reliance on congressional testimony is only relevant if they can demonstrate that the existing provision is ambiguous and without plain meaning.

Petitioners claim that the statute is ambiguous because it appears to require the person who suffered the injury, i.e., the child, to expend more than $1,000, whereas Congress could not reasonably expect a minor or disabled individual to actually remit payment. Petitioners contend that resort to legislative history is therefore appropriate.

Respondent argues that the meaning of the statute is plain. Pointing to another subsection of the same statute, respondent notes that "any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or disabled ... may, if the person meets the requirement of subsection (c)(1) of this section, file a petition for compensation under the program." 42 U.S.C. § 300aa–11(b)(1)(A). Respondent elaborates: "The special master correctly turned to petitioners as the legally responsible care givers, to ascertain if they had incurred unreimbursable expenses in excess of $1,000 on behalf of their child in the care of her alleged vaccine-related condition." Def.Resp. to M. for Review at 6. Because the parents had not satisfied the monetary threshold through personal expenditure or liability, respondent concludes, the special master properly dismissed the petition. We agree.

---

1. Petitioners' brief consistently refers to the Equal Protection clause of the Fifth Amendment, although no such provision exists. It has been recognized, however, that the Fourteenth Amendment's Equal Protection clause is applicable to the federal government. *Vance v. Bradley*, 440 U.S. 93, 95 n. 1, 99 S.Ct. 939, 942 n. 1, 59 L.Ed.2d 171 (1979).

We are convinced that the meaning of the statute is plain: petitioners themselves must incur, with respect to the victim, at least $1,000 in vaccine-related medical costs in order to qualify for compensation under the Vaccine Act. Although plaintiff's contention that Congress intended the monetary requirement to be a measure of severity rather than a means of excluding Medicaid recipients from recovery is a plausible one, such an interpretation would render the language of the statute, specifically the reference to *unreimbursable* expenses, meaningless. It seems more reasonable that Congress purposely included that particular phrase to further the purpose of the Act, i.e., to distribute finite funds to victims who were not already receiving government assistance.[2]

Plaintiff has furnished no legislative history which would indicate that Congress meant to assign a contrary meaning to the phrase *unreimbursable*, and this court's independent review of the legislative record has revealed none. Ironically, the congressional testimony cited by plaintiff bolsters the conclusion that Congress sought to limit recovery under the Act to those who are not enrolled in other government assistance programs. Testimony from Senate committee hearings provides:

> To the extent that victims choose the legislative [compensation] route, the vaccine-injury costs, such as medical, education, and training expenses for immunization victims, that presently are paid by entitlement and social programs, will be shifted to the compensation fund, reducing the burden of Federal programs. In addition the incentive to enter the welfare roles because of high medical costs would be eliminated for victims that choose that fund. Hence, such income supports to families would no longer be paid by the Federal government.

*National Childhood Vaccine–Injury Compensation Act: Hearing on S. 2117 Before the Comm. on Labor and Human Resources,* 98th Cong., 2nd Sess. 239 (1984) (estimated costs proposal submitted by Putnam, Hayes & Bartlett, Inc.). This history suggests the likelihood that the "unreimbursable expenses" requirement was intended to assure, *inter alia,* that a victim would recover *either* under the Act *or* under another government assistance program, but not under both.

Finally, we recognize that this is not an issue of first impression; indeed, this court has previously held that medical expenses paid for through public assistance programs do not qualify as "unreimbursable expenses" as contemplated by the statute. *See, e.g., Black v. Sec. of Dep't of Health & Human Serv.,* 33 Fed.Cl. 546 (Fed.Cl.1995); *Hayes v. Sec. of Dep't of Health and Human Serv.,* No. 93–287V (Fed.Cl.Spec.Mstr. Aug. 15, 1994), *aff'd,* (Fed.Cl. Dec. 22, 1994). In *Black,* petitioner's medical expenses had been paid in their entirety by the Indian Health Service. *Black,* 33 Fed.Cl. 546. Nevertheless, petitioner asserted that he had met the monetary threshold because the medical costs of his vaccine-related injury had exceeded $1,000 even though he had no personal liability for these expenditures. *Id.* The court disagreed:

> While Congress intended to aid the needy and afflicted with this Act, Congress also specified which among the needy and afflicted would be entitled to compensation. Congress' use of a six-month and $1000 threshold to measure the severity of a victim's medical and financial hardship, although rough and inexact, still has some logic to it and it not wholly without reason.
> .... It may be argued, and with some persuasiveness, that measuring the severity of injury by how great a financial impact it causes is a particularly crude yardstick. It is, though, the most useful measure for the Act's purposes. If the Program's design were to make an injured child physically whole, indeed a pecuniary measurement of seriousness would be meaningless. However, all the court can do is seek to address those conditions that are not just physically severe, but economically severe. With that perspective, limiting compensation to those petitioners who can show

---

2. In contrast, adopting plaintiff's interpretation necessarily implies that Congress endorsed a program in which Medicaid recipients with vac- cine-related injuries receive a double recovery from the government.

that, prior to their appearance before the court, they have incurred at least $1000 in expenses for which there is no source of recompense is eminently reasonable. It is those petitioners who are most in need of, and entitled to, Program funds.

*Id.* We find this reasoning persuasive. Accordingly, because petitioners here did not spend or incur liability for $1,000 of their own money for vaccine-related medical expenses, the special master acted properly in dismissing the petition.

**B**

█ Petitioners also contend that the special master's interpretation of "unreimbursable expenses" violates the Equal Protection clause of the Constitution. They argue that the statutory construction urged by the special master unconstitutionally excludes certain groups from coverage under the Vaccine Act. In essence, petitioners argue that poor people (i.e., Medicaid recipients) will always be precluded from receiving benefits under the vaccine compensation program and that this exclusion amounts to an unconstitutional deprivation.

█ Equal protection analysis begins by defining the nature of the excluded group. When a group is excluded based on its race or ethnicity, i.e., a suspect classification, a court will review the claim using a strict scrutiny standard. *Regents of the Univ. of California v. Bakke,* 438 U.S. 265, 290, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). Under these circumstances, the government must demonstrate that a compelling state interest is at stake which would justify the discrimination. *Id.* When a group is classified by non-suspect criteria, however, there must merely be some rational basis for the classification, i.e., the law must be rationally related to a legitimate state interest. *FCC v. Beach Commun., Inc.,* 508 U.S. 307, 313–14, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993).

Poverty has never been held to create a suspect class. The Supreme Court has explicitly provided that distinctions based upon wealth are constitutional when there is some rational basis for the distinction. *Harris v. McRae,* 448 U.S. 297, 322–23, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980); *Maher v. Roe,* 432 U.S. 464, 470–71, 97 S.Ct. 2376, 2380–81, 53 L.Ed.2d 484 (1977); *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 29, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). Petitioners must therefore show that the criteria established by the Vaccine Act have no rational basis.

Petitioners argue that there is no rational basis for the exclusion of Medicaid recipients, because the ultimate purpose of the monetary threshold is to ensure that only severe injuries are compensated. Because individuals on welfare are as likely to suffer extreme injuries as other vaccine recipients, petitioners contend, they are equally entitled to recover under the Vaccine Act.

The special master was unpersuaded by petitioners' arguments. First, although the special master agreed that Congress enacted the Vaccine Act to compensate victims of severe injuries, she found that a victim's monetary expenditure is an inherent part of the statutory threshold for access to program compensation. Fed.Cl.Spec.Mstr. April 25, 1995 at 4. Second, she noted Congress' option not to provide benefits for those vaccine recipients whose medical needs are already being satisfied without cost to themselves. *Id.* Indeed, to do so would essentially result in a double recovery for the victims, a result antithetical to the purposes of the Vaccine Act. *Id.* Based upon this reasoning, the special master held that the denial of coverage to Medicaid recipients was rationally based. We agree and hold that the special master's dismissal order did not violate petitioners' rights guaranteed by the Equal Protection Clause.

**III**

Based on the foregoing, we find that the special master correctly construed the Vaccine Act. Because petitioners have not incurred at least $1,000 in unreimbursable, vaccine-related expenses, they have failed to satisfy the requirements of 42 U.S.C. § 300aa–11(c)(1)(D)(i) and, consequently, have failed to establish a prima facie case. Petitioners' objections to the special master's decision are OVERRULED. Judgment shall

be entered for respondent in accordance with the special master's April 25, 1995 decision.