**Dennis Lee BLACK, Guardian Ad Litem of his minor child, Daniel Black, Petitioner–Appellant,**

**and**

**Verna May, Petitioner–Appellant,**

**and**

**Jose R. Rodriguez and Guadalupe Rosas Rodriguez, individually and as next friends of Natalie Rosas Rodriguez, a minor, Petitioners–Appellants,**

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent–Appellee.**

Nos. 95–5137, 95–5156 and 95–5162.

United States Court of Appeals, Federal Circuit.

Aug. 22, 1996.

James D. Leach, Viken, Viken, Peachota, Leach & Dewell, Rapid City, South Dakota, argued, for petitioner-appellant Dennis Lee Black. Of counsel was Jeffrey L. Viken.

Thomas C. Knowles, Van Blois & Knowles, Oakland, California, argued, for petitioner-appellant Verna May.

Richard Gage, Gage & Moxley, Cheyenne, Wyoming, argued, for petitioners-appellants Jose R. Rodriguez and Guadalupe Rosas Rodriguez.

Robert D. Kamenshine, Attorney, Appellate Staff, Civil Division, Department of Justice, Washington, D.C., argued, for respondent-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, and Barbara C. Biddle, Attorney.

Peter H. Meyers, George Washington Law School, Washington, D.C., argued, for amicus curiae.

Before PLAGER, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

These three consolidated appeals call on us to interpret a provision of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 to 300aa–34. The Act provides that persons who suffer injuries related to the administration of certain vaccines may qualify for participation in the Act's compensation program. To receive compensation under the program, an injured party must first file a petition that satisfies several requirements, among which is the requirement that the petitioner submit documentation demonstrating that the injured person "incurred unreimbursable expenses ... in an amount greater than $1,000." 42 U.S.C. § 300aa–11(c)(1)(D)(i). The special masters in each of the three cases before us found that the petitioners failed to satisfy the $1000 requirement. The special masters therefore dismissed each of the petitions, and the Court of Federal Claims affirmed the dismissals.

In this court, the appellants have raised a variety of arguments challenging the dismissal orders. We reject the arguments directed to the construction of the statute, and we also reject the appellants' constitutional claims. We accept in part, however, the argument that under certain circumstances Vaccine Act petitioners may be able to satisfy the statutory $1000 requirement through a supplemental pleading filed after the initial petition. Accordingly, we affirm the judgments in two of the three cases (Black and Rodriguez) and remand the third case (May) to the Court of Federal Claims for further proceedings.

I

A

Daniel Black, a Native American child, received a diptheria-pertussis-tetanus (DPT) vaccination on December 14, 1984, at an Indian Health Service hospital. Shortly thereafter, he developed serious medical problems, the effects of which he has continued to experience since that time. On October 1, 1990, his father filed on his behalf a petition seeking compensation under the Vaccine Act. When a question arose as to whether Daniel Black had incurred at least $1000 in unreim-

bursable expenses attributable to the vaccine-related injury, his father filed an affidavit stating that prior to filing the petition he had spent $814.14 on a computer system that was used in part to aid in Daniel's rehabilitation. The affidavit added that between February 1992 and April 1994 Daniel's father spent an additional $3,719.75 on computer equipment that was used in part for Daniel's therapy. The record also reflected that Daniel had incurred medical expenses of $17,427.10, but that the expenses had been paid by the Indian Health Service. On the government's motion, the special master dismissed Black's petition on the ground that Daniel Black had not incurred unreimbursable expenses of more than $1000 prior to the date the petition was filed. The Court of Federal Claims affirmed the dismissal. *Black v. Secretary of Dep't of Health & Human Servs.*, 33 Fed. Cl. 546 (1995).

Verna May, an adult, received a rubella vaccination on April 5, 1990, and thereafter developed an ailment in her joints. On April 3, 1991, more than two years before the expiration of the three-year Vaccine Act statute of limitations, she filed a petition for compensation under the Vaccine Act compensation program. She filed her Vaccine Act petition in order to toll California's one-year statute of limitations for tort actions. The government subsequently moved for dismissal on the ground that May had not incurred more than $1000 in unreimbursable expenses prior to filing her petition. She responded that, although she had incurred expenses of only $892.62 at the time her petition was filed, she incurred additional expenses within a month thereafter that brought her total expenses to more than $1000. The special master dismissed May's petition on the ground that she had not incurred more than $1000 in unreimbursable expenses attributable to her vaccine-related injury before she filed her petition, and that the expenses she incurred after the petition was filed could not be counted toward the $1000 threshold. The Court of Federal Claims affirmed. *May v. Secretary of Dep't of Health & Human Servs.*, No. 91–1057V, 1995 WL 298554 (Ct. Fed.Cl. July 25, 1995).

Natalie Rosa Rodriguez, a child, received a DPT vaccination on October 3, 1984, after which she developed serious medical problems. On October 1, 1990, her parents filed on her behalf a petition for compensation under the Vaccine Act. Counsel for the Rodriguez family subsequently informed the special master that the family could not establish that it had incurred at least $1000 in unreimbursed expenses as a result of the vaccine-related injury. The special master therefore dismissed the petition, and the Court of Federal Claims affirmed. *Rodriguez v. Secretary of Dep't of Health & Human Servs.*, 34 Fed. Cl. 57 (1995).

B

A person seeking compensation under the Vaccine Act must file a petition for compensation. A person may file such a petition if he or she "meets the requirements of subsection (c)(1)" of section 11 of the Act, 42 U.S.C. § 300aa–11(c)(1). One of those requirements is that the person with the vaccine-related injury suffered the effects of the injury for more than six months and "incurred unreimbursable expenses due in whole or in part" to the injury "in an amount greater than $1000." 42 U.S.C. § 300aa–11(c)(1)(D). In order for a petitioner to be eligible for compensation under section 15 of the Vaccine Act, 42 U.S.C. § 300aa–15, the petition must be filed within the statutory limitations period. In the case of vaccines administered before October 1, 1988, the limitations period is 28 months from that date; in the case of persons vaccinated after October 1, 1988, the limitations period is 36 months from the occurrence of the first symptom of the injury or 24 months from the date of death if death occurs as the result of the administration of the vaccine. 42 U.S.C. § 300aa–16. Section 12 of the Act, 42 U.S.C. § 300aa–12, grants the Court of Federal Claims jurisdiction to determine if a petitioner under section 11 is entitled to compensation, and section 13 of the Act, 42 U.S.C. § 300aa–13, provides that compensation shall be awarded if the petitioner can prove (1) the matters required in the petition by section 11(c)(1), and (2) that there is not a preponderance of the evidence that the injury or death described in the petition was due to factors unrelated to the administration of the vaccine in question.

The appellants are all somewhat differently situated with respect to the issue presented in this case. The Rodriguez appellants have not alleged that they have had to pay or become legally liable for more than $1000 of unreimbursable expenses due to their daughter's vaccine-related injury. Appellant Black has alleged that he has had to pay more than $1000 in unreimbursable expenses attributable to his son's vaccine-related injury, but the payments he relies on to exceed the $1000 statutory threshold were made after the expiration of the 28–month statute of limitations applicable to his case. Appellant May has alleged that she had to pay more than $1000 in unreimbursable expenses and that those payments were made within the three-year limitations period applicable to her case, although she had not made $1000 in unreimbursable payments by the time she filed her Vaccine Act petition. Because of the way we interpret the pertinent Vaccine Act provisions, the differences among the appellants' cases are significant in determining the eligibility of each of the appellants for compensation under the Act.

II

■ We first address the several issues of statutory construction that the appellants have raised in support of their claims. They have focused in particular on the phrase "incurred unreimbursable expenses … in an amount greater than $1000," which they contend the trial courts construed too narrowly.

Citing the dictionary definition of the term "incur," *i.e.*, "to become liable or subject to," *Webster's Third New International Dictionary* 1146 (1968), the appellants argue that the injured persons "incurred unreimbursable expenses" in excess of $1000 at the time of their injuries, inasmuch as their injuries were so severe that they faced the near-certain prospect of ultimately suffering unreimbursable expenses of more than $1000. In ordinary usage, however, to "incur" expenses means to pay or become liable for them; the term does not refer to any and all expenses that may ultimately be traceable to a particular event. Thus, a person who is

released from a hospital after treatment for a broken leg would normally be said to have "incurred" the hospital expenses at that point, but not to have "incurred" the expenses that may flow from special measures that are subsequently required for the person's rehabilitation.

The context in which the term "incurred" is used in the Vaccine Act confirms that the term is used in this conventional manner and does not refer to anticipated payments or obligations for which liability has not already attached. Section 15 of the Act distinguishes between "actual unreimbursable expenses incurred [at a particular time]" and "reasonable projected unreimbursable expenses" that "have been or will be incurred by or on behalf of [the injured person]." 42 U.S.C. § 300aa–15(a)(1)(A). The distinction that the statute draws between expenses that "have been" incurred and those that "will be" incurred makes it clear that the reference in Section 11 of the Act to the requirement that the petitioner demonstrate in his or her petition that the injured person "incurred unreimbursable expenses" in an amount greater than $1000 refers to expenses for which payment has been made or for which liability has attached. If the appellants' proposed interpretation of "incurred" were adopted, the distinction in section 15 between expenses that "have been" incurred and expenses that "will be" incurred would have no meaning.

■ It is also impossible to read the statutory language, as the Rodriguez appellants ask us to do, to make the $1000 expense threshold applicable regardless of who ultimately bears the responsibility for those expenses, whether it be the injured person's family, a medical insurer, an employer, or a government agency. To interpret the statute in that fashion would read the word "unreimbursable" out of the statute and would make eligibility turn entirely on whether the expenses traceable to the injury (whether reimbursable or not) exceeded $1000. It is no answer to say, as the Rodriguez appellants do, that the word "unreimbursable" has meaning because the party ultimately responsible for payment will not be reimbursed. Under that proposed construction there would never be a case in which the injured person incurred more than $1000 in expenses but was ineligible for the compensation program on the ground that the expenses were reimbursable. Thus, if the word "unreimbursable" is to be given some meaning in the statutory scheme, the statute cannot be triggered by the mere payment of $1000 in expenses, regardless of who bears the expense.

There is likewise no force to the argument that the Vaccine Act is ambiguous and that the $1000 requirement therefore should not be applied according to its terms. The argument is that the $1000 requirement cannot mean what it seems to say, because it refers to expenses incurred by the person injured, while the obligations in the case of an infant victim are normally incurred by the infant's parents or other legal representative. In the case of injured minors, however, the statutory reference to expenses "incurred" by the injured person was plainly meant to refer to expenses incurred on behalf of the victim by his legal representatives, and the statute has consistently been construed in that manner. In any event, any lack of clarity in the statute on that point does not justify reading the $1000 requirement in a way that its language does not permit, which is what the appellants' argument would require us to do.

■ Appellant Black argues that because Daniel Black's medical expenses were paid by the Indian Health Service, the statute as construed by the Court of Federal Claims made it more difficult for him, as a Native American, to qualify for the compensation program. That construction of the statute, Black argues, violates Congress's duty to deal fairly with Native Americans and therefore should not be adopted by this court.

Black's argument is wholly without merit. By including the requirement that expenses be "unreimbursable," Congress plainly intended to exclude some persons who incurred expenses attributable to vaccine-related injuries but had those expenses paid by others, such as private insurers or public programs. What Black is arguing, in essence, is that while Congress may have wanted to exclude some persons whose expenses were defrayed by others, it could not have wanted to do that

in the case of Native Americans whose medical expenses have been paid by the Indian Health Service.

There is no indication in the statute that Native Americans are to be treated any differently from others for purposes of establishing eligibility for the program. In order to construe the statute to avoid the kind of unfair treatment of Native Americans that Black perceives, we would have to read the word "unreimbursable" out of the statute, which we decline to do, or we would have to create a special statutory exception for Native Americans, for which there is no textual justification whatever.

■ Finally, there is no merit to Black's alternative argument that the $1000 requirement is simply a matter of proof at trial, and that it does not matter when the expenses were incurred, as long as a total of at least $1000 in expenses was incurred before the compensation award was made. The statute makes clear that the $1000 in expenses is a threshold criterion for seeking entry into the compensation program: in order to be eligible for compensation, a petitioner must file a petition within the applicable statutory limitations period, 42 U.S.C. § 300aa–16, and in order to file a qualifying petition, the injured person must have incurred at least $1000 in unreimbursable expenses, 42 U.S.C. § 300aa–11(c)(1)(D)(i). Because the Rodriguez appellants and Black failed to show that they incurred unreimbursable expenses of more than $1000 at any time before the expiration of the Vaccine Act statute of limitations, the statute bars them from obtaining compensation. Because May offered evidence that she incurred more than $1000 in unreimbursable expenses before the expiration of the limitations period, however, her circumstances are different, a point we address in detail in part IV of this opinion.

### III

■ The Rodriguez appellants argue that if the $1000 requirement of section 11(c)(1)(D)(i) is interpreted as the trial courts did in this case, it violates the Due Process Clause of the Fifth Amendment, and in particular its equal protection component. That argument was comprehensively addressed and correctly rejected by the special masters and the Court of Federal Claims.

The appellants' argument is that by making eligibility for the program turn on incurring $1000 of unreimbursable expenses, Congress has made it more difficult for indigent persons to qualify for compensation, because indigents often have their medical expenses defrayed by government programs such as Medicaid. According to the appellants, the statute therefore discriminates against indigents.

It is true that persons who enjoy comprehensive insurance or the benefits of other medical programs are less likely to be eligible for compensation under the Vaccine Act than persons who are personally liable for all of their medical costs. The eligibility requirement of the Act, however, was not designed to disadvantage poor persons, and the fact that it may disproportionately disqualify certain groups, including indigents and persons who enjoy the benefits of other medical programs, does not give rise to an equal protection violation. Members of other groups may similarly find it more difficult to become eligible for Vaccine Act benefits because their medical expenses are defrayed by public or private medical programs. Such groups include members of military families, Native Americans, medicare recipients, and private citizens whose employers offer generous health benefits. In general, having comprehensive medical coverage is a considerable benefit; the fact that in one unusual setting it may turn out to have unwanted consequences does not mean that the beneficiary of the coverage has thereby been denied the equal protection of the laws.

■ The eligibility criteria of the Vaccine Act must be analyzed under the "rational basis" standard, not the "strict scrutiny" test that is applied in equal protection cases when fundamental rights are at stake or when the government acts on the basis of a suspect classification. In the first place, the Vaccine Act does not implicate any "fundamental right," for a "noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status." *Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct.

2457, 2470, 45 L.Ed.2d 522 (1975). The cases of *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), and *Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981), on which amicus curiae relies, do not support the appellants' constitutional argument, as those cases hold only that a State may not disqualify indigents from enjoying certain benefits, such as a divorce (*Boddie*) or the blood test that is required to defend against a state-sponsored paternity suit (*Little*), by denying those benefits to anyone who cannot pay the required fee. The rationale of those cases has never been extended to a monetary benefit program such as the Vaccine Act. Nor has the denial of eligibility for a monetary benefit program been regarded as an infringement of the right to rear and care for children, even though such programs may have a significant impact on a claimant's ability to provide for his or her children. *See Weinberger v. Salfi*, 422 U.S. at 768–73, 95 S.Ct. at 2468–71; *Dandridge v. Williams*, 397 U.S. 471, 485–87, 90 S.Ct. 1153, 1161–63, 25 L.Ed.2d 491 (1970).

Second, the fact that the statute may have a disparate impact on indigents does not call for heightened scrutiny under equal protection principles. *See Harris v. McRae*, 448 U.S. 297, 323, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980); *Maher v. Roe*, 432 U.S. 464, 470–71, 97 S.Ct. 2376, 2380–81, 53 L.Ed.2d 484 (1977); *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 29, 93 S.Ct. 1278, 1294–95, 36 L.Ed.2d 16 (1973); *see also Schweiker v. Wilson*, 450 U.S. 221, 234, 101 S.Ct. 1074, 1082–83, 67 L.Ed.2d 186 (1981). Consequently, the Vaccine Act eligibility standard satisfies equal protection principles as long as the standard satisfies the "rational basis" test traditionally applied to legislation that confers benefits on qualifying persons. *See Bowen v. Gilliard*, 483 U.S. 587, 598, 107 S.Ct. 3008, 3015–16, 97 L.Ed.2d 485 (1987); *Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971); *Flemming v. Nestor*, 363 U.S. 603, 611, 80 S.Ct. 1367, 1372–73, 4 L.Ed.2d 1435 (1960).

An eligibility test may be rational even if it does not do a perfect job of selecting those cases that appear to be appropriate subjects of congressional concern. As the Supreme Court has stated, drawing lines that create distinctions regarding eligibility for social welfare programs "is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." *Schweiker v. Wilson*, 450 U.S. at 234, 101 S.Ct. at 1083 (quoting *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976)); *see also Dandridge v. Williams*, 397 U.S. at 485, 90 S.Ct. at 1161 ("In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.").

While Congress might have settled on different eligibility criteria, it was not obligated to extend the coverage of the Act to all persons suffering any vaccine-related injury. *See Califano v. Boles*, 443 U.S. 282, 296, 99 S.Ct. 2767, 2776, 61 L.Ed.2d 541 (1979) (Congress reasonably could decide to "concentrate limited funds where the need [was] likely to be greatest"). In particular, it was rational for Congress to conclude that, as a general matter, those who incur only modest expenses or whose expenses are reimbursed from other sources present less compelling cases for compensation than those who incur huge, unreimbursed expenses. We therefore discern no constitutional flaw in the $1000 requirement, particularly in light of the "strong presumption of constitutionality" that attaches to legislation conferring monetary benefits. *Mathews v. De Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976).

We also reject the Rodriguez appellants' contention that children with "devastating, million dollar injuries" are precluded from participating in the vaccine injury compensation program "if their parents are too poor to be able to expend $1000 of their own money." While the statute contains an express expense requirement, it does not classify petitioners based on their ability to pay. The inability to pay medical expenses does not prevent participation in the compensation program, as long as $1000 of unreimbursable expenses are incurred. That is, once the

parents of the injured child become legally liable for particular expenses, the expenses may be counted toward the $1000 requirement. Thus, with respect to persons who incur large expenses, the statute does not discriminate between those who can pay them and those who cannot.

■ Finally, relying on *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), counsel for amicus curiae argues that the eligibility requirement of the Vaccine Act, as construed by the Court of Federal Claims, violates the Due Process Clause, even apart from its equal protection component. The issue in *Mathews v. Eldridge* was whether procedural due process required a hearing prior to the termination of Social Security disability benefits. That case, however, is inapposite here. The substantive issue to be resolved in this case is whether the petitioners have incurred more than $1000 of unreimbursable expenses. As a matter of procedure, the statute provides the parties with the ultimate hearing: a judicial forum in which to litigate the question of eligibility. There is therefore no issue regarding the denial of a hearing to petitioners, which is what *Mathews v. Eldridge* is all about. What the petitioners object to is not the denial of a hearing, but the substantive rule of eligibility that has been applied to them. Because we have held that substantive rule to be constitutionally valid, we reject the arguments advanced by amicus curiae.

■ Along with the parties, amicus curiae advances the more general argument that to exclude certain persons from the substantial, long-term benefits of the Act simply because they or their families failed to incur more than $1000 in unreimbursable expenses within the first three years after the onset of the injury is contrary to the fundamental purpose the Act was designed to serve: to provide generous financial compensation for victims of severe vaccine-related injuries. It may well be that the $1000 requirement, as now written, excludes some persons from the compensation program whom Congress would have wanted to bring within the program had it focused on their particular cases. But it is not a court's function to disregard a statutory provision or to strike it down on constitutional grounds whenever the provision produces a result in a particular case that is contrary to what the court discerns as the general purpose underlying the statute. *See Weinberger v. Salfi*, 422 U.S. at 777, 95 S.Ct. at 2472 (the constitutional question "is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute"). Absent outright irrationality, the task of refining a statutory scheme such as the Vaccine Act so that it more precisely accords with the purposes for which the Act was designed is the responsibility of Congress, not the courts.

IV

Appellants Black and May assert that even if the $1000 requirement is a prerequisite to initiating a compensation proceeding, the Court of Federal Claims erred by failing to consider the expenses that they incurred after filing their petitions. They contend that any deficiency in their petitions should be deemed cured by their subsequent filings, which established that they ultimately incurred a total of more than $1000 in unreimbursable expenses.

■ Under Rule 15(d) of the Federal Rules of Civil Procedure and its identically worded equivalent, Rule 15(d) of the Rules of the United States Court of Federal Claims, a trial court may "upon reasonable notice and upon such terms as are just" permit a plaintiff to file a supplemental pleading that recites facts occurring after the complaint was filed; if the supplemental pleading is permitted, the new allegations can be relied upon to cure what would have been a defect in the plaintiff's case. In *Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), for example, the plaintiff sought judicial review of his claim under the Social Security Act. The Court noted that the Act required a claimant to seek and obtain a ruling on his claim from the Secretary of Health, Education, and Welfare prior to seeking judicial review. Nonetheless, even though filing an application with the Secretary was a "nonwaivable condition of jurisdiction," the Court

noted that the application in that case was filed while the suit was pending and that a supplemental pleading reciting that fact "would have eliminated this jurisdictional issue." 426 U.S. at 75, 96 S.Ct. at 1889. That decision is consistent with others holding that defects in a plaintiff's case—even jurisdictional defects—can be cured while the case is pending if the plaintiff obtains leave to file a supplemental pleading under Rule 15(d) reciting post-filing events that have remedied the defect. *See Intrepid v. Pollock,* 907 F.2d 1125, 1129 (Fed.Cir.1990); *Wilson v. Westinghouse Elec. Corp.,* 838 F.2d 286, 290 (8th Cir.1988); *United States v. C.J. Elec. Contractors, Inc.,* 535 F.2d 1326, 1329 (1st Cir. 1976); *Security Ins. Co. v. United States ex rel. Haydis,* 338 F.2d 444, 449 (9th Cir.1964).

Although Rule 15(d) of the Rules of the Court of Federal Claims does not apply by its terms to Vaccine Act proceedings before the special masters, Rule 1 of the Vaccine Rules adopted by the Court of Federal Claims gives the special masters broad authority to employ procedures consistent with the Vaccine Rules and the Act. We agree with the special master in May's case that Rule 1 authorizes the special masters to apply the principles of Rule 15(d) in appropriate circumstances. The special master stated that he would have exercised his discretion to accept May's supplemental affidavit, but that he considered himself barred from doing so, because he regarded the $1000 requirement in the Vaccine Act as "time-specific," *i.e.,* he construed the Act to require that the $1000 in unreimbursable expenses be incurred before the petition is filed.

We agree with the special master that the $1000 requirement is "time-specific," but we do not think that conclusion bars the special master from accepting a supplemental pleading that would cure a petition that is defective because it was filed before the $1000 expense threshold was reached. By analogy, federal court jurisdiction is "time-specific," in that the existence of federal jurisdiction "ordinarily depends on the facts as they exist when the complaint is filed." *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 2221–22, 104 L.Ed.2d 893

(1989); *see Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993). Nonetheless, a defect in the plaintiff's case, even a jurisdictional defect, can be cured by a supplemental pleading under Rule 15(d) in appropriate circumstances. *Mathews v. Diaz,* 426 U.S. at 75, 96 S.Ct. at 1889; *cf. Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. at 832–38, 109 S.Ct. at 2222–26 (allowing appellate court to use Rule 21, Fed.R.Civ.P., to cure a jurisdictional defect). Applying that principle here, we hold that when a petition is pending and a petitioner seeks to supplement the petition with a pleading alleging that within the Vaccine Act statute of limitations period the petitioner incurred more than $1000 in unreimbursable expenses, the special master and the Court of Federal Claims have discretion to accept the supplemental pleading.

■ Determining whether a supplemental pleading can be used to rescue an insufficient petition or complaint in a particular case depends on a careful reading of the substantive provision at issue. If the statute in question contains, for example, an express prohibition against filing a complaint before the expiration of a statutory waiting period, it would defeat the purpose of the statutory prohibition to permit a plaintiff to ignore the waiting period, file his complaint during the prohibited period, and then seek to cure the defect by filing a supplemental pleading alleging that the waiting period expired during the pendency of the action. The Supreme Court's decisions in *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993), and *Hallstrom v. Tillamook County,* 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), illustrate that point. The statutes at issue in those cases contained express prohibitions against filing suit prior to the expiration of a waiting period or before exhausting administrative remedies. The Supreme Court therefore required the complaints filed during the prohibited period to be dismissed and did not permit the actions to go forward, even though the waiting period or administrative exhaustion was completed while the complaint was pending. As the Supreme Court viewed the statutes at issue in those cases, it would be contrary to Congress's intent for a district court to employ a proce-

dural device that would permit a plaintiff to file his complaint within the prohibited period, yet still maintain the action. *Cf. Keene Corp. v. United States*, 508 U.S. at 208–09, 113 S.Ct. at 2040–41 (construing 28 U.S.C. § 1500 to bar the Court of Federal Claims from entertaining the claim· of a plaintiff who, at the time of filing the claim, had an action pending in any other court for or in respect to the same claim); *Weddel v. Secretary of Dep't of Health & Human Servs.*, 23 F.3d 388, 392–93 (Fed.Cir.1994) (construing 42 U.S.C. § 300aa–11(a)(5)(A), which bars a person with a pending civil action for damages for a vaccine-related injury from filing a petition for compensation, to require dismissal of a petition filed before the civil action was dismissed).

By contrast, the statute at issue in *Mathews v. Diaz* did not contain similar language forbidding a claimant from filing an action prior to the agency's denial of an administrative claim, although the statute barred the claimant from obtaining judicial review before seeking administrative relief. The Supreme Court therefore found that it did not do violence to the applicable statute to permit the plaintiff's case to go forward, even though the exhaustion of administrative remedies occurred after the complaint was filed rather than before.

We regard the $1000 requirement of the Vaccine Act as more akin to the statute at issue in *Mathews v. Diaz* than to the statutes at issue in *McNeil* and *Hallstrom*. While it is clear that a petition that does not demonstrate at least $1000 of unreimbursable expenses is insufficient, that does not answer the question whether the inadequacy can be cured and, if so, when the curative measures must be taken. The answer to that question is provided by the joint operation of section 11 of the Act, which sets out the required contents of the petition, and section 16, which sets out the applicable statute of limitations for compensation claims.

A petition is required to be filed within the limitations period and must satisfy the requirements of section 11(c)(1), including the requirement of incurring $1000 in unreimbursable expenses. Thus, Congress has in effect determined that if the $1000 threshold is not reached within the limitations period, a would-be Vaccine Act petitioner cannot file a timely and qualifying petition. The requirement that qualifying petitions be filed within the statute of limitations makes clear that Congress did not contemplate that the opportunity to seek compensation would remain open for whatever period of time is necessary for the petitioner to reach the $1000 expense threshold. On the other hand, there is no indication that Congress intended that compensation would be barred simply because the petition was filed too early in the limitations period or because a technical defect in the petition was not noticed and corrected at the time of filing. Thus, as long as a petitioner could have filed a qualifying petition within the limitations period, there is no sound reason to prohibit that petitioner from filing a supplemental pleading. We therefore reject the government's argument that a Vaccine Act petition cannot be supplemented with allegations and proof that the petitioner incurred post-petition èxpenses within the limitations period that brought the total of the petitioner's unreimbursable expenses to more than $1000.

██ Appellant May filed a supplemental affidavit in which she alleged that, within a month after she filed her petition (and nearly two years before the expiration of the Vaccine Act limitations period), she had accumulated more than $1000 in unreimbursable expenses attributable to her vaccine-related injury. The special master, however, construed the statute to bar him from considering any expenses that May allegedly incurred after the date on which she filed her petition. For the reasons set forth above, we think the special master has the authority to and should consider all the expenses May alleged in her supplemental pleading, without regard to whether they were incurred before or after she filed her petition.

If May had filed her supplemental pleading prior to the expiration of the Vaccine Act limitations period, we would have no doubt that the supplemental pleading should be accepted. In that setting, there would be no more than a formal distinction between filing a supplemental pleading and filing a new petition with the additional expense allega-

tions included, a procedure the government concedes would be valid.

May's case is complicated somewhat by the fact that, even though she incurred her claimed $1000 in expenses before the expiration, of the statute of limitations, she did not file her supplemental pleading reciting the necessary expenses until after the limitations period had expired. The timing of a supplemental complaint, however, does not ordinarily defeat an action that was initiated during the limitations period, even if the initial complaint was defective. *See Intrepid v. Pollock*, 907 F.2d at 1130 (post-limitations supplemental pleading held sufficient to cure defective complaint filed during limitations period); *Security Ins. Co. v. United States ex rel. Haydis*, 338 F.2d at 449 (post-limitations supplement not barred, even though initial complaint was jurisdictionally defective). We are advised that in Vaccine Act cases documentation regarding pre-petition expenses is often submitted after the case is pending, without regard to whether the statute of limitations has passed before the documentation is filed. Indeed, that procedure was followed in May's case, and neither the government nor the special master attached significance to the date on which the documentation was supplied. What is critical in light of the statutory scheme is that the expenses necessary to reach the $1000 threshold be incurred within the limitations period, which May's supplemental pleading properly alleged. We therefore vacate the dismissal of May's petition and remand May's case to the Court of Federal Claims for a determination whether the expenses May claimed to have incurred during the limitations period qualify under the statute and, if so, whether she is entitled to compensation.

We do not reach the same result in Black's case, however. The critical difference in Black's case is that the additional unreimbursed expenses that Black invoked to exceed the $1000 threshold were incurred after the applicable Vaccine Act statute of limitations had run. Black's affidavit thus failed to show that he could have filed a petition within the limitations period that would have validly alleged unreimbursed expenses of more than $1000. Under our interpretation of the Vaccine Act, it would be improper to permit a supplemental pleading to do what a timely filed petition could not have done. The special master was therefore correct in dismissing Black's petition and refusing to consider the facts alleged in his supplemental pleading.

Each party shall bear its own costs.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*